1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| INVENTIST, INC.,<br><br>                              Plaintiff,<br><br>     v.<br><br>NINEBOT, INC., et al.,<br><br>                              Defendants. | No.  3:16-CV-5688-BJR<br><br>CLAIM CONSTRUCTION ORDER |

     This is an order on claim construction that addresses terms of U.S. Patent No. 8,807,250 (the '250 Patent"), which is owned by Plaintiff Inventist, Inc.  The Court has considered the parties' briefing and supporting materials, and has reviewed the transcript of a *Markman* hearing held in this matter before the Honorable Ronald B. Leighton, who was previously assigned to this case.

## I.  Background

     The '250 Patent is entitled "Powered Single-Wheeled Self-Balancing Vehicle for Standing User."  Dkt. No. 51-1.  It relates to a "powered, gyroscopically balanced unicycle device to be used while standing, having leg contact surfaces which are made of a yielding, slightly soft material whose mild friction against the user's legs allows stable, precise control of the device without restraining the legs in any way."  *Id.*, Abstract.  The patent includes 20 claims.

ORDER - 1

Plaintiff has alleged infringement of the '250 Patent by Defendant.  The parties have identified eight claim terms or phrases in dispute.

## II.  Discussion

### A.    Claim Construction Standards

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'"  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc)).  To determine the meaning of claims, courts consider the claim language, the specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  Courts may also consider extrinsic evidence, including expert and inventor testimony, dictionaries, and treatises. *Id.* at 980.

The Local Patent Rules of the U.S. District Court for the Western District of Washington establish the procedure for claim construction in this District.  Local Patent Rule 132(b) provides that the parties shall submit a Joint Claim Construction and Prehearing Statement, which must include "[e]ach party's proposed construction of each disputed claim term, phrase, or clause."

### B.    Whether To Reach Invalidity Arguments During Claim Construction

Plaintiff has proposed a construction for each of the eight disputed claim terms.  By contrast, Defendant has only proposed a construction for two of the eight disputed claim terms. For the remaining six disputed terms, Defendant asserts that the terms are "unsupported and renders claim invalid[]."  Dkt. No. 47-1.

Plaintiff maintains that Defendant is improperly attempting to argue invalidity at the claim construction stage.  Plaintiff asserts that claim construction should be addressed separately from invalidity, noting that the Federal Circuit has cautioned not to "put the validity cart before

the claim construction horse." *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (Federal Circuit has "certainly not endorsed a regime in which validity analysis is a regular component of claim construction.").

Defendant's invalidity arguments are based on Paragraph 1 and Paragraph 2 of 35 U.S.C. §112 ("Section 112"), which the Court considers below in determining whether to reach invalidity arguments during this claim construction process.[1]

### 1.    Invalidity Based on Written Description Requirement

Paragraph 1 of Section 112 provides that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."  The first clause of paragraph 1 has been referred to as the "written description" requirement, while the second clause has been called the "enablement" requirement.

Plaintiff argues that it is inappropriate to raise the issue of "written description support" in claim construction proceedings.  Dkt. No. 49 at 5.  Plaintiff points to language from *Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1336 (Fed. Cir. 2010), in which the court stated that a district court "must base its analysis of written description under 35 U.S.C. §112, ¶ 1 on proper claim construction."

---

[1] In 2011, Congress approved the "America Invents Act" (AIA), which replaced Paragraphs 1 and 2 of 35 U.S.C. §112 with newly-designated § 112(a) and (b); however, the AIA made this change applicable to patent applications filed on or after September 16, 2012.  *Inphi Corp. v. Netlist, Inc.*, 805 F.3d 1350, 1351 n.2 (Fed. Cir. 2015).  Here, the '250 Patent application was filed in 2011, so the Court looks to the language of former Paragraphs 1 and 2 of Section 112.

ORDER - 3

1    The Court agrees with Plaintiff that it would be inappropriate to attempt to determine

2    during claim construction whether any claims in the '250 Patent are invalid for failure to comply

3    with the written description requirement.  Claim construction is a question of law.  By contrast,

4    "compliance with the written description requirement is a question of fact."  *Invitrogen Corp. v.*

5    *Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed. Cir. 2005).  Under the circumstances here, it

6    would not be appropriate for the Court to venture into such an analysis at the claim construction

7    phase of this proceeding.  *See, e.g.*, *0912139 B.C. Ltd. v. Rampion USA Inc.*, No. C18-1464JLR,

8    2019 WL 3426058, at *11 (W.D. Wash. July 30, 2019) (finding that arguments regarding

9    compliance with written description requirement "are better suited for disposition after the claim

10   construction phase, on a more complete record.").

11   **2.     Invalidity Based on Indefiniteness**

12        Paragraph 2 of Section 112 provides that "[t]he specification shall conclude with one or

13   more claims particularly pointing out and distinctly claiming the subject matter which the

14   applicant regards as his invention."  If a patentee fails to comply with this requirement, a claim

15   may be held to be invalid for indefiniteness.  The Supreme Court has held that "a patent is

16   invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and

17   the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the

18   scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

19   Indefiniteness is a question of law.  *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341

20   (Fed. Cir. 2015).

21        Plaintiff acknowledges that "in some instances the issue of indefiniteness is properly

22   raised during Markman [proceedings] because 35 U.S.C. §112 ¶ 2 is 'inextricably intertwined

23   with claim construction.'"  Dkt. No. 58 at 7 (quoting *Atmel Corp. v. Information Storage*

ORDER - 4

*Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999)).[2]  Plaintiff states that "[i]f a claim term

cannot be construed, despite sufficient effort, then it may be because the phrase is indefinite."

Dkt. No. 58 at 8; *see also Honeywell Int'l, Inc. v. International Trade Comm'n,* 341 F.3d 1332,

1338 (Fed. Cir. 2003) ("[i]f the court determines that a claim is not 'amenable to construction,'

then the claim is invalid as indefinite under 35 U.S.C. §112, ¶ 2.").  Defendant argues that

"definiteness cannot be separated from the claim construction exercise; either a claim term is not

susceptible to construction, and thus the patent is indefinite, or the claim term is susceptible to

construction and the patent is definite."  Dkt. No. 57 at 1.

However, contrary to Defendant's assertion, "district courts frequently decline to rule on

indefiniteness at the *Markman* stage."  *0912139 B.C. Ltd.,* 2019 WL 3426058, at *16 (collecting

cases).  "Such reticence makes sense: 'well-settled principles,' including the 'high burden of

proof on a party challenging the patent based on indefiniteness,' disfavor ruling on indefiniteness

during claim construction."  *Id.*  Therefore, the Court declines to reach Defendant's arguments

regarding invalidity based on indefiniteness at the claim construction stage of this proceeding.

## C.  Construction of Claims

### 1.  "Seatless frame"

Claims 1 and 18 of the '250 Patent use the term "seatless frame."  Plaintiff argues that

this term should be given its plain and ordinary meaning and requires no additional construction.

Plaintiff notes that Defendant agrees that the term "frame" refers to the frame of the unicycle

---

[2] However, one district court has observed that "the Federal Circuit's statements that indefiniteness is intertwined with claim construction mean only that the [c]ourt must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness, and not that the [c]ourt must determine indefiniteness during the claim construction proceedings." *ASM Am., Inc. v. Genus, Inc.*, No. C-01-2190-EDL, 2002 WL 1892200, at *15 (N.D. Cal. Aug. 15, 2002).

device.  Defendant has offered no competing construction, but instead raises only invalidity arguments.

The Court agrees with Plaintiff.  The term "seatless frame" is not difficult to understand and its meaning is apparent from the specification, particularly the drawings that depict a unicycle frame without a seat.  The term will be given its plain and ordinary meaning, which is "seatless frame."

### 2.     "Without a vertically ascending control handle"

Claim 20 includes the term "without a vertically ascending control handle."  As before, Plaintiff argues that the meaning of this term is not difficult to understand and it should simply be given its plain and ordinary meaning, while Defendant offers no competing construction but again relies on invalidity arguments.  The Court adopts Plaintiff's construction and gives this term its plain and ordinary meaning of "without a vertically ascending control handle."

### 3.     "Leg contact members are configured so as to not substantially encircle a user's leg"

Claim 18 includes the phrase "leg contact members are configured so as to not substantially encircle a user's leg."[3]  The parties agree that the term "leg contact members" or "surfaces" means "a surface, which protrudes from the sides of the device, and which may come into contact with a user's leg, enabling the user to hold the device in place with the lower leg." Dkt. No. 49 at 3.  Plaintiff argues that the remaining language requires no additional construction and should be given its plain and ordinary meaning.  Defendant has not offered a construction of this remaining language but relies on invalidity arguments.

---

[3] Claim 1 includes similar language.

ORDER - 6

The Court agrees with Plaintiff that this language is not difficult to understand and should be given its plain and ordinary meaning of "configured so as to not substantially encircle a user's leg."

### 4.      Means-Plus-Function Terms

The parties dispute two "means-plus-function" terms:  (1) "means for automatically adjusting speed while executing a turn," which is used in Claim 13; and (2) "means for automatically adjusting fore-aft pitch while executing a turn in response to detection of sideways leaning of the vehicle," which is used in Claim 15.

Paragraph 6 of 35 U.S.C. §112 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Plaintiff notes that construction of a mean-plus-function limitation requires two steps: Determining the claimed function and then identifying "the corresponding structure in the written description that performs that function." *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005).

Plaintiff has proposed the following constructions of the two means-plus-function terms:

**"means for automatically adjusting speed while executing a turn"**

- Function:  Adjusting the vehicle's speed while executing a turn.

- Structure:  A gyroscope system associated with the motor that senses position information in relation to the ground and regulates the motor accordingly to control the acceleration and deceleration of the vehicle

**"means for automatically adjusting fore-aft pitch while executing a turn in response to detection of sideways leaning of the vehicle**

- Function:  Adjusting the vehicle's fore-aft pitch while executing a turn in response to detection of sideways leaning of the unicycle device

ORDER - 7

- Structure:  A gyroscope system associated with the motor that senses position information in relation to the ground and regulates the motor accordingly to control the acceleration and deceleration of the vehicle

Once again, Defendant does not offer a proposed construction of either of these means-plus-function terms.[4]

The Court adopts Plaintiff's proposed construction of the two means-plus-function terms. In both terms, the "function" proposed by Plaintiff essentially mirrors the claim language. Furthermore, Plaintiff offers ample support from the specification to support its proposed structure.

**5.    "The single wheel defining first and second side planes . . . the first and second vertical planes"**

Claim 18 of the '250 patent discloses a powered unicycle that includes:

a single wheel rotatably coupled to a seatless frame, **the single wheel defining first and second side planes** that are parallel with and symmetric about a central vertical plane of the wheel and respectively touch a first exterior side and a second exterior side of the wheel; . . .

wherein the first and second foot platforms extend from the **first and second vertical planes**, respectively, in a direction perpendicular thereto a distance that is greater than the corresponding first and second contact members extend in that direction . . . .

(emphasis added).[5]  Plaintiff argues that the terms "first and second side planes" and "first and second vertical planes" refer to the "same first and second vertical side planes."  Dkt. No. 49 at 15.  Although Plaintiff acknowledges that it would have been clearer to use the same term

---

[4] In addition to arguing that these claim terms are invalid as indefinite and under the written description requirement, Defendant also appears to suggest that these claims are invalid under the "enablement requirement" of Paragraph 1 of Section 112.  However, "an enablement inquiry typically begins with a construction of the claims."  *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1241 (Fed. Cir. 2003).  Therefore, as before, the Court declines at the claim construction proceeding to reach Defendant's argument that these claim terms are invalid under the enablement requirement.

[5] In addition, dependent claim 7 includes similar language.

ORDER - 8

consistently in Claim 18, Plaintiff argues that the claim language read as a whole, combined with the specification, supports a finding that the two terms have the same scope and meaning because "they refer to the same thing." *Id.* at 16.  Defendant does not offer a proposed construction of these terms, but again argues that the claim terms are invalid.

The Court agrees with Plaintiff that the claim language when read as a whole and combined with the specification make it clear that the terms "first and second side planes" and "first and second vertical planes" are equivalent and have the same scope and meaning.  The Court finds that both terms should be construed to mean "first and second vertical planes located at the side of the device."

**6.      "Configured to be readily contactable"**

The term "configured to be readily contactable" appears in in Claims 1 and 18.  This is the one of the two terms where both sides have provided a proposed construction.

In Claim 1, the term is used in the following context:  a first or second "leg contact surface[6] that in its entirety extends substantially longitudinally in the line of travel of the device and is **configured to be readily contactable** by the side of a user's leg, at or below the knee, when that user is standing" on the first or second foot platform. (emphasis added).

In Claim 18, the term is used in the following context:  "first and second leg contact members that each, in its entirety, extends substantially longitudinally in the line of travel of the device and is **configured to be readily contactable** by the side of a user's leg, at or below the knee, when that user is standing on the foot platforms."  (emphasis added).

---

[6] As noted above, the parties have agreed that the term "leg contact surface(s)/ member(s)" means "a surface, which protrudes from the sides of the device, and which may come into contact with a user's leg, enabling the user to hold the device in place with the lower leg."

ORDER - 9

Plaintiff argues that the term should be given its plain and ordinary meaning of "configured to be readily contactable." Defendant proposes that the term should be construed to mean "configured in a manner to be gripped via squeezing/pressing against while the rider operates the unicycle device" (in reference to a leg contacting the leg contact surface).

Plaintiff argues that Defendant's proposed construction would improperly introduce limitations into the claims. The Court agrees. Neither the claim language, the specification, nor the prosecution history require that contact members of the device must be "gripped via squeezing/pressing against."

In discussing this term's "plain and ordinary meaning," Plaintiff has suggested that the term means that "the user should be able to make contact with the contact surfaces without much difficulty." Dkt. No. 49 at 18. The Court finds this language is more understandable than "configured to be readily contactable" and is consistent with the claims, specification, and prosecution history.

Therefore, the Court construes the term "configured to be readily contactable" to mean "configured so that the user is able to make contact without much difficulty."

### 7. "In its entirety extends substantially longitudinally in the [line/direction] of travel of the device"

Finally, the parties offer different proposed constructions of the term "in its entirety extends substantially longitudinally in the [line/direction] of travel of the device." This term appears in Claims 1 and 18 as follows:

- Claim 1: a first or second "leg contact surface that **in its entirety extends substantially longitudinally in the line of travel of the device** . . . ." (emphasis added).

- Claim 18:  "first and second leg contact members that each, **in its entirety, extends substantially longitudinally in the line of travel of the device** . . . ." (emphasis added).

Plaintiff asserts that this term should be given its plain and ordinary meaning of "in its entirety extends substantially longitudinally in the direction of travel of the device" without additional construction.  Defendant proposed that the term should be construed to mean "is substantially flat, and not concave or convex, and extends parallel to the line/direction of travel of the device substantially more than it extends in another direction" (in reference to a leg contact surface).

Plaintiff argues that Defendant's proposed construction would improperly introduce additional limitations that are not supported by the claim language, specification, or prosecution history.  The Court agrees, particularly with respect to Defendant's suggestion that the term must refer to a leg contact surface that is "substantially flat, and not concave or convex."

In support of its argument that this term should be given its plain and ordinary meaning, Plaintiff argues that "[t]he phrase means exactly what it says, namely, that the leg contact surfaces extend lengthwise (east to west) in the direction of travel (toward the front and rear, also east to west)."  Dkt. No. 49 at 21.  Plaintiff points to language in the specification and prosecution history to argue the term "substantially longitudinally" was "added to clearly disclaim the type of invention taught by the prior art," which "requires leg contact surfaces that surround the user's leg."  *Id.*  Plaintiff asserts that a leg contact surface that extends "substantially longitudinally" in the direction of travel is opposed to a leg contact surface that is "perpendicular" to the direction of travel.  *Id.*; *see also* Dkt. No. 58 at 12 (Plaintiff suggests the

ORDER - 11

"true meaning" of the phrase is that "the contact surface extend substantially longitudinally, as opposed to perpendicular (like the prior art) to the direction of travel of the device.").

The Court will adopt Plaintiff's proposed construction and give the term its plain and ordinary meaning of "in its entirety extends substantially longitudinally in the direction of travel of the device."

### III. Conclusion

For the foregoing reasons, the Court adopts the claim constructions as set forth above. The Court directs the parties to submit a joint status report by September 24, 2021, to provide the Court with their views on a proposed schedule and trial date for this matter.

Dated:  September 10, 2021

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 12