The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INVENTIST, INC.,

    Plaintiff,

v.

NINEBOT INC., et al.,

    Defendants.

Civil Action No. 3:16-cv-5688-BJR

ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

    Plaintiff Inventist brought suit against Defendants Ninebot, Inc. and its affiliated companies, alleging infringement of U.S. Patent No. 8,807,250 (the "'250 patent") and U.S. Design Patent Nos. D729698 (the "'698 patent") and D673081 (the "'081 patent"). On January 18, 2023, the Court granted Plaintiff's partial motion for summary judgment and granted in part and denied in part Defendants' partial motion for summary judgment. Dkt. 154. One of several determinations that the Court made in that order was that Plaintiff did not have standing to sue for damages that accrued between August 3, 2017 and March 2, 2019 (for the '250 and '081 patents) and September 19, 2019 (for the '068 patent). Both parties have moved for reconsideration of this ruling on different grounds. Having reviewed the motions, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will grant Plaintiff's motion for reconsideration and deny

Defendants' motion for reconsideration. The reasoning for the Court's decision follows.

## I. BACKGROUND

The Court's summary judgment order analyzed in detail the various assignment agreements that determined Plaintiff's standing, and this order assumes familiarity with that analysis. In brief, the Court's decision turned on whether the right to sue for past infringement, which Plaintiff assigned to another entity, Future Wheel, reverted back to Plaintiff under a reversion provision of Plaintiff's joint-venture agreement. Dkt. 154 at 13-14 (citations omitted). The Court found that, because the joint-venture agreement's reversion provision did not transfer the right to sue for past infringement back to Chen when the joint venture dissolved, Chen could not have assigned that right to Plaintiff Inventist in 2019. The Court therefore found that Plaintiff did not have standing to sue for infringement that occurred during the period covered by the joint-venture agreement, between August 3, 2017 and March 2, 2019 (for the '250 and '081 patents) and September 19, 2019 (for the '068 patent).

Plaintiff's motion for reconsideration is based on a declaration and agreement Plaintiff executed with its joint-venture partner after the Court's summary judgment ruling, in an attempt to cure the standing defect identified by the Court. *See* 2/1/23 Chen Decl., Dkt. 159 at 4. Plaintiff describes the agreement as a "supplemental patent assignment that clarified the parties' original intent that Mr. Chen (and now Inventist) have the full right to sue for all damages, past and present." Pl. Mtn., Dkt. 158 at 1-2. The supplemental agreement is a short paragraph stating that Future Wheel assigns the right to sue for past infringement to Chen. 2/1/23 Chen Decl., Dkt. 159 at 4. Plaintiff urges the Court to reconsider its interpretation of the joint-venture agreement with this newly executed nunc pro tunc assignment in mind. Plaintiff argues that the agreement "cure[s] any prudential standing defect." Pl. Mtn., Dkt. 158 at 4. In response, Defendants argue that Plaintiff's declaration is improper, that the supplemental assignment is defective and should have been

2

presented to the Court earlier, and that neither document can cure Plaintiff's standing at this stage. *See* Def. Opp'n, Dkt. 162.

Defendants' motion for reconsideration does not ask the Court to revisit its interpretation of the joint-venture agreement, but rather to alter the time period covered by its ruling to reflect that Plaintiff lacks standing to sue for infringement that occurred at any time prior to March 2, 2019 (for the '250 and '081 patents) and September 19, 2019 (for the '068 patent), even before the joint venture was formed in 2017. *See* Def. Mtn., Dkt. 156. In support, Defendants cites 2017 agreements by which Inventist assigned its patent rights to Future Wheel. *Id.* at 2. These agreements were not previously presented to the Court.

## II. DISCUSSION

### A. Legal Standard

To succeed on a motion for reconsideration of a court's prior order, the moving party must show "manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." LCR 7(h). Reconsideration is an "extraordinary remedy," and the moving party bears a "heavy burden." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Jackson v. Aliera Companies, Inc.*, 2020 WL 5984075, at *1 (W.D. Wash 2020).

### B. Plaintiffs' Motion

#### 1. *Article III and Prudential Standing*

Before considering whether Plaintiff's supplemental assignment agreement was properly executed, the Court will determine whether, in general, a nunc pro tunc agreement is a legitimate means of curing Plaintiff's pre-2019 standing. Defendant argues that lacking the right to sue for past infringement deprives Plaintiff of Article III standing as it relates to infringement that occurred prior to 2019. Plaintiff maintains that this case is properly understood as implicating only prudential

3

standing and that Plaintiff did not lose Article III standing when it assigned the right to sue for past infringement to Future Wheel.

Prudential standing refers to "judicially self-imposed limits on the exercise of federal jurisdiction," including that "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). Article III standing is the "irreducible constitutional minimum" that requires a plaintiff to establish he suffered an injury in fact that is fairly traceable to the actions of the defendant and redressable by the court. *Id.* Unlike prudential standing, which can sometimes be cured without dismissing an action, a lack of Article III standing requires dismissal. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("[T]his court has held that if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing . . . . [but] [i]n circumstances where dismissal for lack of initial standing is not required, . . . jurisdictional defects can be cured before judgment.").

The Court agrees with Plaintiff that lacking the right to sue for infringement during a particular time-period does not deprive it of Article III standing. Chen was the original plaintiff when the action was filed in 2016, and he undisputedly held legal title and all substantive rights to the patent at that time, as Chen did not assign any rights to anyone prior to the 2017 joint venture. Therefore, Chen clearly suffered the type of redressable injury that underlies constitutional standing. *See Mas-Hamilton*, 156 F.3d at 1210-11 (standing is present when "the holder of title to the patent at the time of the infringement brought the action"). Chen later assigned the right to collect damages for his injury to Future Wheel, but he nevertheless had the right to bring this action when he did so. Inventist was later substituted as Plaintiff, because Chen mistakenly believed that

4

he had assigned the right to sue for past infringement to Inventist in a 2019 assignment agreement. Again, however, this does not alter Chen's standing to sue at the time he filed the action.

The temporary loss of the right to sue (and collect damages) for past infringement during the pendency of an action is appropriately characterized as a loss of prudential standing. The Federal Circuit has consistently held that, when a plaintiff owned all substantive rights to a patent at the commencement of an action, a later assignment of one or more of those rights does not cause an incurable loss of Article III standing. *See Mas-Hamilton*, 156 F.3d at 1210-11; *Schreiber*, 402 F.3d at 1203. Both the loss of the right to sue for past infringement and similar standing defects, such as failing to join a necessary party under the governing patent statutes, have been treated as impacting only prudential standing, and courts have allowed plaintiffs to cure these defects prior to final judgment. *See, e.g.*, *Mentor H/S*, 240 F.3d at 1018-19; *Mas-Hamilton*, 156 F.3d at 1210-11; *Schreiber*, 402 F.3d at 1203; *Parallax Grp. Int'l, LLC v. Incstores.com, LLC*, No. SACV 16-00929-AG (DFMx), 2017 WL 3017059, at *3 (C.D. Cal. Jan. 25, 2017); *see also* Pl. Mtn., Dkt. 158 at 5 (citing additional out-of-circuit cases). Furthermore, nunc pro tunc agreements and joinder are generally permissible vehicles for restoring prudential standing. *Mas-Hamilton*, 156 F.3d at 1210-11; *Mentor H/S*, 240 F.3d at 1018-19; *Parallax Grp. Int'l, LLC v. Incstores.com, LLC*, 2017 WL 3017059, at *3.

Contrary to Defendants' characterization, courts permitting prudential standing defects to be cured did not necessarily do so "well before the court had rendered judgment (or partial summary judgment)." Def. Opp'n, Dkt. 162 at 11. Although courts have not always articulated what is meant by the "final judgment" before which standing defects can be corrected, it is clear from the posture of cases in which corrections have been permitted that this case has not reached that point. *See, e.g.*, *Mas-Hamilton*, 156 F.3d at 1210-11 (permitting nunc pro tunc agreement to cure standing after

trial); *Mentor H/S*, 240 F.3d at 1018-19 ("inviting" plaintiff to join party with standing following trial). This Court may have granted partial summary judgment on several issues, but this action is otherwise ongoing. More judgments will be entered before the case is closed, and thus partial summary judgment is not the "final judgment."

### 2. Validity of the Supplemental Assignment Agreement

Having determined that a nunc pro tunc agreement of the type executed by Plaintiff is capable of curing the standing defect identified in the Court's summary judgment order, the Court now turns to Defendants' argument that the supplemental agreement is defective or ineffective for several reasons. Defendants argue that (1) the agreement was signed only by an officer of InMotion,[1] not Future Wheel, and thus was not effective to convey a right owned by Future Wheel; (2) it is not entirely clear who signed the agreement on behalf of InMotion, or whether they had the authority to execute the transaction; and (3) the agreement assigns the right to sue for past infringement to Chen, who is not joined as a plaintiff. Def. Opp'n, Dkt. 162 at 4-6. Defendants also ask the Court to strike the declaration to which the supplemental agreement is attached because it is unreliable and violates the parole evidence rule. *Id.* at 3-4.

Notably, Defendants do not contest that, absent the purported technical defects in the supplemental agreement, the document explicitly assigns Chen the right to sue for past infringement that he previously lacked. The Court will address each of Defendants' arguments in turn.

#### a.   Chen's Declaration

As an initial matter, the Court will not strike the declaration Chen submitted with the supplemental agreement. Defendants' sole objection to the declaration centers on its statement that

---

[1] Plaintiff identifies InMotion as Chen's former joint-venture partner and the co-owner of Future Wheel. Chen Decl., Dkt. 159 at 1-2.

"[t]he supplemental assignment carries out [Chen's and InMotion's] original intent that the joint venture, in the form of Future Wheel, assigned me the right to sue for past infringement." *See* Def. Opp'n, Dkt. 162 at 3. Whether or not Chen can attest to the original intent of the parties is irrelevant, because the joint-venture agreement is not at issue, only the supplemental agreement is. The intent of the parties to the supplemental agreement—to transfer the right to sue for past infringement to Chen—is objectively clear, and there is no need for extrinsic evidence. However, Chen's declaration also contains factual representations—such as who signed the supplemental agreement—that *are* relevant. Defendants do not object to the admissibility of these representations, and the Court sees no reason why they should not be considered along with the agreement itself as needed.

                        b.      *InMotion's Authority to Convey the Right to Sue for Past Infringement*

At no point do Defendants dispute the unassailable fact that the joint-venture agreement granted Chen and InMotion 100% ownership of Future Wheel, which they created in 2017. Rather, Defendants' objection to InMotion's signing the supplemental agreement is two-fold: first, Defendants argue that only Future Wheel's officers, and not its owners, can convey a right owned by the corporation; second, Defendants imply that, although InMotion and Chen owned 100% of Future Wheel as part of the joint venture that created it in 2017, ownership of Future Wheel may have changed since then.

Neither of these objections is well founded. As to the current ownership of Future Wheel, the joint-venture agreement clearly establishes ownership in Chen and InMotion only. *See* 9/6/22 Chen Decl., Dkt. 133, Exh. A. Defendants have not given the Court any reason to believe ownership has changed. Raising the mere possibility that a subsequent transaction with some unknown party could have taken place is insufficient to cast doubt on the validity of the supplemental agreement.

As to Chen and InMotion's authority to sign on behalf of Future Wheel, Defendants speculate that, based on general principles of incorporation, it is possible Future Wheel's owners cannot sign on its behalf. However, Defendants give the Court no basis for doubting that, as 100% owners of Future Wheel, Chen and InMotion have the authority to execute the supplemental agreement. Absent no showing to the contrary, the Court will accept that they have the authority to do so.

    c.  *Validity of InMotion's Signatory and Chen's Declaration*

Defendants claim that it is not clear who signed the supplemental agreement on behalf of InMotion because the signature is "indecipherable" and the signatory's name and title are not clear from the agreement. Def. Opp'n, Dkt. 162 at 4. This claim is meritless. For one, Chen's declaration states that the supplemental agreement was signed by him and "Xuekai Yan, the CEO of InMotion." 2/1/23 Chen Decl., Dkt. 159 at 1. The signature on the agreement matches that name as much as any ordinary signature matches any name, and it need not be "deciphered" further. *See id.* at 4. Additionally, there is no reason to believe that Yan does not have the authority to sign on behalf of InMotion or Future Wheel simply because the agreement does not explicitly describe his authority.

    d.  *Joinder of Chen*

Defendants' only valid objection to the supplemental agreement is that it assigns the right to sue for past infringement to Chen, who is not a plaintiff in this action. Plaintiff Inventist cannot recover damages on Chen's behalf despite Chen's owning Inventist. However, this is well within the range of defects that courts have allowed plaintiffs to cure before final judgment, and this Court has found on the merits that Defendants infringed at least one of Plaintiff's patents. *Mentor H/S*, 240 F.3d at 1018-19 (allowing joinder after trial for standing purposes). Although this error could have been corrected earlier, the Court declines to deny Plaintiff the bulk of the damages to which

it is otherwise entitled due to an easily correctable procedural defect. Accordingly, the Court will give Plaintiff the opportunity to join Chen as a plaintiff.

C.     **Defendant's Motion**

Defendants' motion for reconsideration, which seeks to alter the time-period covered by the Court's prior ruling to reflect that Plaintiff lacks standing to sue for infringement that occurred at any time prior to 2019, is rendered moot by Plaintiff's supplemental agreement, which restores its standing during this period.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for reconsideration (Dkt. 158) and denies Defendants' motion for reconsideration (Dkt. 156). Plaintiff shall be permitted to join Chen as a plaintiff but must do so no later than April 7, 2023.

DATED this 27th day of March, 2023.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE